# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

ANTHONY FLOWERS,

    Plaintiff,

v.

LT. MIKE LANE; SGT. JONATHAN MCCULLOUGH; SHAE PHILLIPS PRUITT; TY BROOKS; and WILLIAM CHITTY,

    Defendants.

CIVIL ACTION NO.: 2:14-cv-138

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Anthony Flowers ("Plaintiff"), who is currently incarcerated at Johnson State Prison in Wrightsville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 contesting the events surrounding his arrest in Jesup, Georgia. (Doc. 1.) On October 15, 2015, Defendant Ty Brooks and Defendants Mike Lane and Shae Pruitt filed separate Motions for Summary Judgment. (Docs. 33, 35.) The Clerk of Court mailed Notices to Plaintiff advising him of the filed Motions for Summary Judgment and that responses to these Motions were to be filed by November 7, 2015. (Docs. 34, 37.) These Notices further advised Plaintiff that:

    1.    If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.

    2.    If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.

    3.    If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Docs. 34, 37.) Plaintiff filed no Response to the respective Defendants' Motions for Summary Judgment, and the Court received no indication these Notices or Defendants' Motions were undeliverable.[1] However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendant Brooks' unopposed Motion and **GRANT** Defendants Lane's and Pruitt's unopposed Motion. I also **RECOMMEND** the Court **DISMISS** without prejudice Plaintiff's claims against Chitty and McCullough. I further **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint, **CLOSE** this case, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## BACKGROUND[2]

On the night of December 29, 2012, Mark Lane, William Chitty, Jonathan McCullough, and Shae Pruitt, who were employed with the City of Jesup Police Department, and Ty Brooks, a Georgia State Trooper, went to Plaintiff's residence in Jesup, Georgia, to execute an arrest warrant on Plaintiff. (Doc. 1, p. 15.) Plaintiff asserts these law enforcement officers did not announce their presence at his home before they breached the side door of Plaintiff's residence. According to Plaintiff, Defendant Lane entered his home first, followed by Chitty, McCullough,

---

[1] In fact, Plaintiff has failed to file anything in this case since December 18, 2014. (Docs. 10, 11.)

[2] The recited allegations in this "Background" Section are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party. However, this is not to say the Court accepts the allegations contained in Plaintiff's Complaint as true. Defendants offer their own version of events through their Motions and Statements of Material Fact, to which Plaintiff failed to offer a response. Defendants' undisputed material facts are set forth in Section III of this Report.

2

Brooks, and Pruitt. (Id. at p. 16.) Plaintiff asserts he immediately extended his arms and hands over his head once he realized law enforcement officers were in his home. Plaintiff also alleges Chitty pointed his weapon at him and, without provocation, began firing at Plaintiff. Plaintiff sustained injuries after being shot in his chest and right arm. (Id.)

Plaintiff's Complaint was ordered to be served upon Lane, McCullough, Chitty, Pruitt, and Brooks for excessive use of force and failure to intervene, in violation of the Fourth Amendment. (Doc. 6.)

## DISCUSSION

Defendants Brooks, Lane, and Pruitt contend Plaintiff cannot sustain a failure to intervene claim against them. Defendants Brooks, Lane, and Pruitt also contend they are entitled to qualified immunity. In support of his Motion for Summary Judgment, Defendant Brooks relies on his Brief in Support, a Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, and his Declaration. Defendants Lane and Pruitt rely on their Brief in Support, their Statement of Material Facts, and the affidavit of Angie Ryals and attached documentation.

As set forth below, the Court agrees that Plaintiff fails to establish a genuine dispute as to his claims, and Defendants' Motions are due to be granted as a result.

**I.     Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury

question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.  Plaintiff's Claims Against Chitty and McCullough

As noted above, the Court directed the United States Marshal to serve Plaintiff's Complaint upon the captioned Defendants by Order dated December 1, 2014. (Doc. 6.) In accordance with that Order, the Clerk of Court prepared USM-285 forms, and the Marshals Service mailed a copy of Plaintiff's Complaint and Waiver of Service to the captioned Defendants. However, the documents sent to Defendants Chitty and McCullough were returned unexecuted and were refused because Chitty and McCullough were no longer working at the

Jesup Police Department. (Docs. 14, 15.) The Court directed Plaintiff to provide the Court with adequate addresses where Chitty and McCullough could be served within twenty-one days of the January 14, 2015, Order. (Doc. 17.) Plaintiff was forewarned that his failure to comply with that Order may result in the dismissal of his claims against Chitty and McCullough. (Id. at p. 2.) Plaintiff failed to respond to this Court's Order.

A district court may dismiss a plaintiff's claims *sua sponte* pursuant to either Federal Rule of Civil Procedure 41(b) ("Rule 41(b)") or the court's inherent authority to manage its docket. Link v. Wabash R.R. Co., 370 U.S. 626 (1962);[3] Coleman v. St. Lucie Cty. Jail, 433 F. App'x 716, 718 (11th Cir. 2011) (citing Fed. R. Civ. P. 41(b) and Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005)). In particular, Rule 41(b) allows for the involuntary dismissal of a plaintiff's claims where he has failed to prosecute those claims, comply with the Federal Rules of Civil Procedure or local rules, or follow a court order. Fed. R. Civ. P. 41(b); see also Coleman, 433 F. App'x at 718; Sanders v. Barrett, No. 05-12660, 2005 WL 2640979, at *1 (11th Cir. Oct. 17, 2005) (citing Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993)); cf. Local R. 41.1(b) ("[T]he assigned Judge may, after notice to counsel of record, *sua sponte* . . . dismiss any action for want of prosecution, with or without prejudice[,] . . . [based on] willful disobedience or neglect of any order of the Court.") (emphasis omitted)). Additionally, a district court's "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits." Brown v. Tallahassee Police Dep't, 205 F. App'x 802, 802 (11th Cir. 2006) (quoting Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983)).

It is true that dismissal with prejudice for failure to prosecute is a "sanction . . . to be utilized only in extreme situations" and requires that a court "(1) conclud[e] a clear record of

---

[3] In Wabash, the Court held that a trial court may dismiss an action for failure to prosecute "even without affording notice of its intention to do so." 370 U.S. at 633.

5

delay or willful contempt exists; and (2) mak[e] an implicit or explicit finding that lesser sanctions would not suffice." Thomas v. Montgomery Cty. Bd. of Educ., 170 F. App'x 623, 625–26 (11th Cir. 2006) (quoting Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.), 62 F.3d 1356, 1366 (11th Cir. 1995)); see also Taylor v. Spaziano, 251 F. App'x 616, 619 (11th Cir. 2007) (citing Morewitz, 62 F.3d at 1366). By contrast, dismissal without prejudice for failure to prosecute is not an adjudication on the merits, and, therefore, courts are afforded greater discretion in dismissing claims in this manner. Taylor, 251 F. App'x at 619; see also Coleman, 433 F. App'x at 719; Brown, 205 F. App'x at 802–03.

While the Court exercises its discretion to dismiss cases with caution, dismissal of Plaintiff's claims against Chitty and McCullough without prejudice is warranted. See Coleman, 433 F. App'x at 719 (upholding dismissal without prejudice for failure to prosecute Section 1983 complaint, where plaintiff did not respond to court order to supply defendant's current address for purpose of service); Taylor, 251 F. App'x at 620–21 (upholding dismissal without prejudice for failure to prosecute because plaintiffs insisted on going forward with deficient amended complaint rather than complying, or seeking an extension of time to comply, with court's order to file second amended complaint); Brown, 205 F. App'x at 802–03 (upholding dismissal without prejudice for failure to prosecute Section 1983 claims, where plaintiff failed to follow court order to file amended complaint and court had informed plaintiff that noncompliance could lead to dismissal). Plaintiff failed to comply with this Court's January 14, 2015, Order and was forewarned that his failure to comply with the Court's directives would result in the dismissal of his claims against Defendants Chitty and McCullough. Additionally, the Court advised Plaintiff in its December 1, 2014, Order that he has the responsibility for pursuing this case. (Doc. 6, p. 7.) Despite that directive, Plaintiff has not filed anything in this case since December 18, 2014.

Thus, the Court should **DISMISS** Plaintiff's claims against Chitty and McCullough for failure to follow the Court's Orders and failure to prosecute.

### III. Plaintiff's Claims Against Defendants Brooks, Lane, and Pruitt[4]

Defendants assert Plaintiff was involved in an altercation with his brother on December 28, 2012, and an arrest warrant was issued against Plaintiff, charging him with aggravated assault.[5] (Doc. 33-1, p. 1.) Defendants, along with Chitty and McCullough, went to Plaintiff's residence late at night on December 29, 2012, in an attempt to arrest Plaintiff. (Id. at p. 2.) All of the lights were off in Plaintiff's home, as he was using only candles and a hurricane lamp for light. Defendants contend that they saw what appeared to be flames inside the house. In light of Plaintiff having threatened to kill himself and the presence of flames inside the house, the officers decided to enter Plaintiff's house based on safety concerns. (Id.; Doc. 35-1, p. 8.) The officers were able to enter the carport of Plaintiff's home, but there was a second door preventing them from going directly into Plaintiff's home. The officers were able to break the glass on the second door to unlock it and entered Plaintiff's home. (Doc. 35-1, pp. 8–9.)

Flowers' house was reminiscent of an episode of "Hoarders", filled with "boxes of junk" stacked in the living and dining room area with "just little pathways" for a person to walk. (Doc. 33-3, p. 9.) Defendant Lane entered into Plaintiff's living room first, followed by Chitty. Defendant Lane moved to the left side of the entryway, and Chitty entered and moved to the right. Once Plaintiff realized officers were inside his house, he stood up from his recliner, raised

---

[4] The Court shall address the separate Motions together, as Plaintiff's claims against these Defendants sound in the same legal analysis. In addition, the Court often refers to Brooks, Lane, and Pruitt collectively as "Defendants" in this Section, unless otherwise noted.

[5] Defense counsel provided the Court with a more thorough picture of the events of December 28 and 29, 2012, but many of the facts set forth in the Briefs are relevant to Plaintiff's claims of use of force at the hands of Chitty. The Court should dismiss that claim for the reasons stated above. Thus, I have limited the discussion to facts germane to the issue of whether Defendants failed to intervene in Chitty's use of force on Plaintiff's behalf, in violation of the Fourth Amendment.

7

his hands and arms over his head, and stood behind his recliner. (Doc. 33-1, p. 2; Doc. 33-3, p. 10.) Defendant Lane tripped over one of the boxes littering Plaintiff's floor and grabbed Chitty's arm in an attempt to steady himself. Immediately thereafter, Plaintiff felt a burning in his chest and right arm and realized Chitty had shot him with his weapon. (Doc. 33-1, p. 3; Doc. 35-1, p. 9.) Chitty did not say anything before he fired his weapon, did not provide a warning before he fired, and was not ordered to fire his weapon. (Doc. 33-1, p. 3; Doc. 35-1, p. 10.) Defendants Brooks and Pruitt were not in the room when Chitty fired his weapon. (Doc. 33-1, p. 3; Doc. 35-1, p. 13.) By all accounts, the shooting was over very quickly. (Doc. 33-1, p. 3; Doc. 33-3, pp. 10, 11.)

Plaintiff's claims against these Brooks, Lane, and Pruitt require an assessment of whether these Defendants are liable to Plaintiff for an alleged failure to intervene in Chitty's use of force against Plaintiff. In addition, Plaintiff's claims against Defendant Lane require, as a precautionary measure, a discussion of whether he failed to stop Chitty's use of force.[6]

### A. Failure to Intervene Claims

"[A]n officer can be liable for failing to intervene when another officer uses excessive force." Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]") (alterations in original) (citing Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998)). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Id.; see also Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010) (explaining that a direct failure to intervene claim "requir[es] the allegations to include facts showing the necessity

---

[6] The Court addresses any putative claims against Defendant Lane, as Chitty's supervisor, with Defendants Brooks and Pruitt and separately.

8

or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct"). When events occur so quickly he or she cannot intervene, an officer is not liable for another's constitutional violation. Fils v. City of Aventura, 647 F.3d 1272, 1290 n.21 (11th Cir. 2011) (citing Brown v. City of Huntsville, Ala., 608 F.3d 724, 740 n.25 (11th Cir. 2010)).

Here, Defendant Brooks declared he was in the kitchen of Plaintiff's home when he heard a gun firing in another room of the home. (Doc. 33-4, p. 2.) Additionally, Defendant Pruitt asserted in her report, written within a few hours of this incident, that she was also in the kitchen trying to extinguish some of the flames in Plaintiff's home when she heard the shots being fired. (Doc. 36-1, p. 4.) Based on the diagram Plaintiff drew during his deposition, the kitchen of Plaintiff's home does not open up to the dining/living room area in which Plaintiff asserts he, Lane, and Chitty were standing. (Doc. 33-3, p. 24.) Thus, Defendant Brooks and Pruitt were not in the same room as Plaintiff, Lane, and Chitty, and Defendants Brooks and Pruitt did not have an opportunity to see into the area where these three men were standing. In fact, Plaintiff testified during his deposition that Defendants Lane and Chitty were the only two people who entered into the dining/living room area. (Id. at p. 9.) In addition, Defendant Brooks declared he did not enter the room where Plaintiff was until after Plaintiff was shot. Defendant Brooks also declared he had no prior knowledge that Chitty was going to fire his weapon until he heard the gun firing. (Doc. 33-4, p. 2.)

The uncontroverted evidence before the Court reveals that Defendants Brooks and Pruitt were not in a position to intervene in Chitty's use of force and, thus, cannot be held liable for their failure to intervene on Plaintiff's behalf. Moreover, when viewing the facts and evidence in the light most favorable to Plaintiff and assuming Defendants Brooks and Pruitt had been in a position to intervene on Plaintiff's behalf (i.e., these Defendants were able to see into Plaintiff's

9

dining/living room area from the kitchen), Defendants Brooks and Pruitt did not have the opportunity to intervene on Plaintiff's behalf in Chitty's use of force. By Plaintiff's own admission during his deposition and description of the use of force, he felt a "burning impact" and heard a "rapid pop, pop, pop, pop" that was "over in a second[.]" (Doc. 33-3, p. 11.) Accordingly, the undisputed evidence shows Chitty's use of force occurred so quickly that Defendants Brooks and Pruitt did not have the opportunity to intervene, even if they had been in a physical position to do so. Fils, 647 F.3d at 1290 n.21.

By this same token, Defendant Lane also did not have the opportunity to intervene in Chitty's use of force, even if it is undisputed that he was in the room with Chitty. Again, the undisputed evidence indicates that the use of force was over very quickly, and there is no evidence that Defendant Lane (or any other officer at the scene) had any time to react to Chitty's use of force or to otherwise intervene on Plaintiff's behalf. The Court should **GRANT** these portions of Defendants' Motions and **DISMISS** Plaintiff's claims against Defendants Brooks and Pruitt in their entirety.

### B. Putative Failure to Stop Claim Against Defendant Lane

Defendant Lane held the rank of lieutenant at the time giving rise to Plaintiff's claims, and it appears Defendant Lane was Chitty's supervisor (or at least the highest ranking person on the scene) on December 29, 2012. Accordingly, this Court must determine whether Defendant Lane, as Chitty's supervisor, could have stopped Chitty's use of force against Plaintiff.

Supervisors cannot be held liable under Section 1983 on the basis of vicarious liability or respondeat superior. Nonetheless, "supervisors are liable under § 1983 either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."

Elmore v. Fulton Cty. Sch. Dist., 605 F. App'x 906, 917 (11th Cir. 2015). A failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it. Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (requiring only allegations of a "causal connection between actions of the supervising official and the alleged constitutional violation"). "The difference between a direct failure to intervene claim and a failure to stop claim under a theory of supervisory liability lies in the position and authority of the defendant with respect to the person who commits the constitutional violation." Keating, 598 F.3d at 765.

As noted above, it appears that Defendant Lane was in charge of the scene on December 29, 2012. However, the undisputed evidence before the Court shows that no one in Plaintiff's house knew Chitty was going to shoot Plaintiff until after he shot Plaintiff and that Defendant Lane did not order Chitty to shoot Plaintiff. (See, e.g., Doc. 33-3, p. 16.) To the extent Defendant Lane had supervisory authority over Chitty, there is no evidence that Defendant Lane failed to exercise that authority to stop Chitty's use of force. In fact, as discussed in the preceding subsection, Chitty's use of force happened so quickly that Defendant Lane would not have even had the opportunity to exercise his supervisory authority to stop the use of force. Additionally, the uncontroverted evidence reveals that Defendant Lane did not even point his gun at Plaintiff or use any force against him whatsoever. (Id. at p. 10.)

In short, Plaintiff fails to create a genuine dispute as to any fact material to his claims against Defendant Lane. Plaintiff presents no evidence that Defendant Lane was personally involved in the use of force incident or that Defendant Lane was in a position to stop Chitty's use

of force and failed to do so. Consequently, the Court should **GRANT** this portion of Defendants Lane's and Pruitt's Motion and **DISMISS** Plaintiff's claims against Defendant Lane in their entirety.

Plaintiff fails to establish a genuine dispute as to facts material to his Fourth Amendment claims against Defendants Brooks, Pruitt, and Lane. Thus, it is unnecessary to address the remaining portions of Defendants' Motions. Martinez v. Burns, 459 F. App'x 849, 851 (11th Cir. 2012) (a qualified immunity defense need not be addressed if the plaintiff cannot sustain an underlying constitutional claim).[7]

## IV. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

---

[7] Defendants Lane and Pruitt made a preemptive argument that Plaintiff cannot sustain a deliberate indifference claim against them in anticipation of Plaintiff's response to their Motion. Plaintiff, of course, failed to respond to this Motion, and the Court did not serve Plaintiff's Complaint on this basis. Accordingly, it is unnecessary to address this ground for summary judgment.

Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, it is my **RECOMMENDATION** that the Court **GRANT** Defendant Brook's Motion for Summary Judgment and Defendants Lane's and Pruitt's Motion for Summary Judgment and **DISMISS** Plaintiff's claims against these three Defendants. I also **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claims against Chitty and McCullough, and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 22nd day of April, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA